# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

| | |
|---|---|
| UNITED WHOLESALE MORTGAGE, LLC<br><br>*Plaintiff*,<br><br>v.<br><br>KEVRON INVESTMENTS, INC.,<br><br>*Defendant*. | Case No.<br>Hon.<br><br><br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff United Wholesale Mortgage, LLC ("Plaintiff" or "UWM"), submits the following Complaint against Defendant Kevron Investments, Inc. ("Defendant" or "Kevron"):

## PARTIES

1. UWM is a Michigan limited liability company with its principal place of business at 585 South Boulevard East, Pontiac, Michigan 48341. UWM's sole member is UWM Holdings, LLC, which is comprised of two members, SFS Holding Corp. and UWM Holdings Corporation. SFS Holding Corp. is incorporated in Michigan and has its principal place of business at 585 South Boulevard East, Pontiac, Michigan 48341. UWM Holdings Corporation is incorporated in Delaware

and has its principal place of business at 585 South Boulevard East, Pontiac, Michigan 48341.

2. Upon information and belief, Defendant Kevron is incorporated in California with its principal place of business at 2659 Townsgate Road, Suite 115, Westlake Village, California 91361.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because this Complaint states an action that is between citizens of different states and, as set out below, involves an amount in controversy that exceeds $75,000, exclusive of interest and costs.

4. This Court has jurisdiction over Kevron because Kevron has established minimum contacts with the State of Michigan by, among other things, entering into a contract with a Michigan company, such that the exercise of personal jurisdiction will not offend traditional notions of fair play and substantial justice.

5. This Court also has jurisdiction over Kevron because Kevron agreed to submit any action arising out of its Wholesale Broker Agreement with UWM to the exclusive jurisdiction of this Court in this District and waived its right to challenge this Court's personal jurisdiction over it. *See* 2020 Wholesale Broker Agreement, Ex. A, at ¶ 7.15; 2021 Wholesale Broker Agreement, Ex. B, at ¶ 7.15.

6. Venue in this District is proper under 28 U.S.C. §§ 1391(b) because a substantial part of the events or omissions giving rise to the claim occurred in this District. Further, in the Wholesale Broker Agreement, the parties agreed that they would submit any action arising out of the Agreement to this Court in this District. *See id.*

## GENERAL ALLEGATIONS

7. UWM is a Pontiac, Michigan-based wholesale mortgage lender who works exclusively with independent mortgage brokers and non-delegated correspondent lenders ("Broker Partners") across the country.

8. UWM itself does not work directly with borrowers—as do retail lenders—until after a loan has funded. Rather, the Broker Partners communicate directly with borrowers and select from over 100 wholesale lenders to choose the lender and loan product they believe to be the borrower's best option.

9. UWM provides its Broker Partners considerable resources, including technology, marketing materials, compliance support, training, and more to help the Broker Partners compete, win, and grow their business.

10. UWM's investment into and support of its Broker Partners is meant to distinguish UWM's exceptional services and those of its Broker Partners from UWM's competitors. UWM takes these investments seriously and expends

significant resources to enhance the business of its Broker Partners, as UWM's success is dependent on the long-term success of its Broker Partners.

11. Kevron is an independent mortgage broker. Kevon advertises itself as a full-service mortgage broker with many years of home loan experience and a specialty in fast funding transactions.

12. Kevron's growth and success in the mortgage industry is partially attributed to UWM's investment in and support provided to Kevron as one of its Broker Partners.

13. In July 2019, Kevron elected to avail itself of UWM's products, services, and resources and entered a Wholesale Broker Agreement with UWM. *See* Ex. A. The Wholesale Broker Agreement was subsequently amended and agreed to by the parties in 2021. Ex. B (the "Agreement").

14. Under the Agreement, Kevron agreed to "offer to UWM for potential purchase and/or funding certain FHA, VA, USDA, conventional, jumbo and/or non-agency mortgage loans as well as select bond program mortgage loans which fall within the parameters of UWM's mortgage loan products." Ex. B, at p. 1; *see also* Ex. A, at p. 1.

15. The Agreement makes clear that Kevron "shall not be obligated to submit any particular mortgage loan applications or any minimum number of loan applications to UWM." Ex. B, at ¶ 7.03; *see also* Ex. A, at ¶ 7.03.

16. Further, since entering into the Agreement, Kevron has been free to terminate the Agreement for any time and for any reason, upon seven days prior written notice. *See* Ex. A, at ¶ 7.06; Ex. B, at ¶ 7.06. Likewise, UWM also may terminate the Agreement for any time and for any reason, upon seven days prior written notice. *See id.*

17. Kevron made certain warranties and representations to UWM "with regard to each Mortgage Loan [Kevron] submitted to UWM for underwriting, purchase, and/or funding that [were to be] true, complete and correct in all material respects as of the date of such submission." Ex. A, at ¶ 3.03; Ex. B, at ¶ 3.03.

18. On March 4, 2021, UWM announced its "All-In Initiative," stating it had decided to end its business relationship with Broker Partners who chose to continue originating loans with select retail lenders specified in the Agreement (the "Select Retail Lenders"). This decision was made by UWM knowing it may result in ending relationships with existing Broker Partners but was necessary to protect the long-term viability of the wholesale mortgage channel. As was explained by UWM through wide-spread financial media coverage, UWM believes the Select Retail Lenders' business model negatively impacts consumers, brokers, and the wholesale mortgage channel in general.

19. In November 2021, Kevron agreed to the most recent iteration of the "All-In Addendum," specifically paragraphs 3.03(x) and 7.30 of the Agreement. *See* Ex. B, at ¶¶ 3.03(x), 7.30.

20. The All-In Addendum amended the Agreement by adding a warranty and representation that Kevron would not submit loans to the Select Retail Lenders, and if it did, such submissions would constitute a breach of the Agreement. *See id.*

21. Specifically, under the All-In Addendum, Kevron "warrants, represents, and covenants to UWM with regard to each Mortgage Loan submitted to UWM for underwriting, purchase, and/or funding that . . . [it] will not submit a mortgage loan or mortgage loan application to Rocket Mortgage or Fairway Independent Mortgage for review, underwriting, purchase, and/or funding." *Id.* at ¶ 3.03(x).

22. Since agreeing to the All-In Addendum in March 2021, Kevron has submitted at least 22 mortgage loans to the Select Retail Lenders.

23. Kevron's mortgage loan submissions to the Select Retail Lenders is in direct violation of Paragraph 3.03(x) of the Agreement.

24. Indeed, if Kevron sought to do business with the Select Retail Lenders, they could have immediately done so by terminating the Agreement before submitting the loan(s) to the Select Retail Lenders. But instead, Kevron elected to continue doing business with and benefit from UWM while simultaneously

breaching the Agreement by submitting loans to the Select Retail Lenders.

25. Kevron's mortgage loan submissions to the Select Retail Lenders have damaged UWM in various ways, including but not limited to, allowing Kevron to reap the benefits of UWM's investments in and services provided to it as a Broker Partner, including UWM's propriety technology, without complying with the Agreement's requirements, and more importantly, by intentionally and directly undermining the entire purpose of the All-In Intuitive.

26. Further, Kevron agreed under the All-In Addendum to pay liquidated damages as follows for any breach of the Addendum:

> [Kevron] and UWM agree that the measure of damages in the event of a breach of [Kevron's] representation and warranty under Section 3.03(x) may be difficult, if not impossible, to ascertain. Accordingly, in the event of a violation of Section 3.03(x), [Kevron] shall immediately pay to UWM the greater of: (i) Five Thousand Dollars ($5,000.00) per loan closed with Rocket Mortgage, Fairway Independent Mortgage or subject to Section 3.03(x), an Acquired Lender, or (ii) Fifty Thousand Dollars ($50,000.00), as liquidated damages for such breach without the need for proof of damages by UWM. UWM's right to liquidated damages are in addition to (not in lieu of) any other monetary or other remedies UWM may have under this Agreement and/or applicable law.

Ex. B, at ¶ 7.30.

27. Under Paragraph 7.30 of the Agreement, Kevron's submission of at least 22 mortgage loans to the Select Retail Lenders equate to at least $110,000.00 in liquidated damages.

28. Kevron further agreed that:

In the event a dispute arises under this Agreement between Broker and UWM, which dispute results in legal action being taken by one or both of the parties, the prevailing party shall be entitled to recover its reasonable attorney fees, costs and other expenses associated with the enforcement of its rights under this Agreement, and the non-prevailing party hereby agrees to promptly pay same.

Ex. A, at ¶ 7.16; Ex. B, at ¶ 7.16.

## COUNT ONE
### BREACH OF CONTRACT

29. Paragraphs 1 through 28 are incorporated by reference as if fully stated herein.

30. The Agreement, as amended by the All-In Addendum, is a valid contract that binds Kevron and UWM.

31. The Agreement, as amended by the All-In Addendum, prohibited Kevron from submitting mortgage loans to the Select Retail Lenders.

32. Kevron breached the Agreement, as amended by the All-In Addendum, by submitting at least 22 mortgage loans to the Select Retail Lenders.

33. As a result, UWM has suffered damages, both pursuant to the Agreement's liquidated damages provision in the amount of at least $110,000.00, and through negative effects to its business model.

## PRAYER FOR RELIEF

34. UWM respectfully requests that the Court enter a judgment finding that

Kevron breached the Agreement and awarding the following to UWM:

    A.    Damages in the amount of at least $110,000.00;

    B.    Other compensatory damages relating to Kevron's breach;

    C.    Attorney fees, costs, and other expenses UWM incurred in this action;

    D.    Pre- and post-judgment interest;

    E.    Such other and further relief as the Court may deem just and proper.

## JURY DEMAND

UWM respectfully demands a trial by jury on all issues triable by jury.

Dated: February 23, 2022

Respectfully submitted,

By: */s/ William E. McDonald*
William E. McDonald, III (P76709)
Mahde Y. Abdallah (P80121)
**BUSH SEYFERTH PLLC**
100 West Big Beaver Road
Suite 400
Troy, MI 48084
T/F: (248) 822-7800
mcdonald@bsplaw.com
abdallah@bsplaw.com

*Attorneys for Plaintiff*
*United Wholesale Mortgage, LLC*