# *EXHIBIT B*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| UNITED WHOLESALE MORTGAGE, LLC<br><br>     *Plaintiff*,<br><br>v.<br><br>KEVRON INVESTMENTS, INC.,<br><br>     *Defendant*. | Case No. 2:22-cv-10395<br><br>Hon. Laurie J. Michelson<br><br>Magistrate Elizabeth A. Stafford |

## PLAINTIFF UNITED WHOLESALE MORTGAGE, LLC'S THIRD SUPPLEMENTAL RESPONSES TO DEFENDANT KEVRON INVESTMENTS, INC.'S FIRST INTERROGATORIES

Plaintiff United Wholesale Mortgage, LLC ("UWM") submits the following supplemental responses to defendant Kevron Investments, Inc.'s ("Kevron") First Interrogatories.

### PRELIMINARY STATEMENT

These responses are not applicable to other cases, facts, or circumstances, or the rules and laws of any other jurisdiction concerning discovery, theories, or causes of action.

UWM provides these responses subject to the requirements of the Federal Rules of Civil Procedure and any applicable local rules of practice, without regard to any "instructions" from Kevron inconsistent therewith, and based upon

information that is available at the present time after a reasonable search and investigation for readily available information or documents from readily available sources where responsive information reasonably would be expected to be found. Discovery, investigation, and analysis of this matter are continuing. Unless expressly stated, no objection, response, or limitation, or lack thereof shall be deemed an admission as to the existence or nonexistence of documents or information. By agreeing to search for documents or information, UWM does not concede that the documents or information presently exists or ever existed.

Specific objections on the grounds of privilege are provided for emphasis and clarity only, and the absence of a specific objection is neither intended, nor should be interpreted, as evidence that UWM does not object to an Interrogatory on the basis of an applicable privilege, immunity, or protection. Likewise, the assertion of one or more privileges or protections does not constitute a waiver of any other privilege or protection that might apply.

This Preliminary Statement is incorporated into all responses by reference as though fully set forth verbatim therein.

## RESPONSES TO INTERROGATORIES

**INTERROGATORY NO. 1:** Please state the name, address, telephone number and job title of each and every person answering or contributing to the answers to any of these discovery requests.

**RESPONSE: These are UWM's responses made after a reasonable and diligent investigation. UWM refers Kevron to the verification page provided at the end of these responses. The individuals principally involved in providing the information that forms the basis of UWM's answers are Bill Stone, Heather Demy, Allen Beydoun, and Ken Chapman.**

**UWM otherwise objects to this Interrogatory as vague, overly broad, and not proportional to the needs of the case, to the extent "contributing" would refer to persons who had only remote or limited involvement in the underlying information contained in the answers but did not assist in responding to the Interrogatories.**

**INTERROGATORY NO. 2:** Identify by name, last known address, and telephone number each person who has knowledge of the facts relating to or bearing upon the subject matter of this lawsuit. For each individual named, please set forth a summary of the facts known to that person.

**RESPONSE: UWM states that various employees or agents may have knowledge of Kevron's contractual relationship with UWM. After a reasonably diligent investigation, UWM has identified the following persons as having knowledge of facts that relate to: a) Kevron's agreement to the Wholesale Broker Agreement between Kevron and UWM, including all amendments**

thereto; b) UWM's announcement of its "All-In Initiative"; and c) Kevron's submission of mortgage loans to Select Retail Lenders since March 2021: Allen Beydoun and Ken Chapman.

UWM otherwise objects to this Interrogatory as compound, overly broad, and unduly burdensome because it requests UWM identify "each" person who may have knowledge of the facts alleged in the Complaint or of the facts relating to or bearing upon the entire subject matter of this lawsuit without regard to however remote or limited that person's knowledge may be and without differentiation as to whether any such fact or subject matter is even in dispute.

**INTERROGATORY NO. 3:** Do you have statements from any individuals (including but not limited to) who claim to have knowledge of the facts alleged in the Complaint, and/or the damages allegedly following therefrom? If so, give the name and address of each such witness, the date of said statement, and state whether such statement was oral or written.

**RESPONSE: UWM states that during communications with Kevin Rhatigan regarding Kevron's breach of the All-In Addendum, Mr. Rhatigan stated that he did not intend to require Kevron's loan officers to comply with the All-In Addendum. After a reasonably diligent investigation, UWM is not aware of any other responsive statements from non-UWM personnel.**

UWM otherwise objects to this Interrogatory on the basis of the attorney-client privilege and work-product protection to the extent it applies to UWM personnel, whose statements (if any were made) would not be within the proper scope of discovery. UWM further objects to this Interrogatory as compound, overly broad, and unduly burdensome because it requests UWM identify "each" such person who may have given a statement bearing on the facts alleged in the Complaint or the facts relating to or bearing upon the entire subject matter of this lawsuit without regard to however remote or limited that person's knowledge may be and without differentiation as to whether any such fact or subject matter is even in dispute.

Without waiving the foregoing objections, nor representing that any such "statements" were made, see the answer to Interrogatory No. 2 for names of persons UWM believes are knowledgeable about the matters referenced in that answer.

**INTERROGATORY NO. 4:**  Identify all damages, losses of any kind or form, expenses, and costs that you claim to have incurred, or will incur, as a result of the conduct alleged in your complaint, and for each damage claims, please explain your calculation on how you arrived at the claimed amount.

<u>RESPONSE:</u> UWM directs Kevron to the Wholesale Broker Agreement attached as Exhibit 2 to the Complaint, which details UWM's liquidated damages.

UWM further states that Kevron's submission of loans to Select Retail Lenders damaged UWM's ongoing business model, mortgage consumers, independent mortgage brokers, and the wholesale mortgage channel as a whole. Indeed, by cutting the broker out of certain transactions, the model of the Select Retail Lenders weakens the individuals and entities that UWM partners with to sell to provide mortgage services to provide to borrowers. The amount of liquidated damages reflects the parties' honest attempt, at the time of the creation and execution of the Agreement, to estimate just compensation for the actual damages likely to arise in the event of Kevron's breach.

UWM otherwise objects to this Interrogatory as irrelevant, premature, unduly burdensome, and not proportional to the needs of the case, because it contravenes Kevron's express contractual acknowledgement that such damages "may be difficult, if not impossible, to ascertain" and because undertaking discovery regarding actual damages would defeat the point of the liquidated-damages clause in the Wholesale Broker Agreement, as amended.

**<u>SUPPLEMENTAL RESPONSE:</u>  Subject and in addition to the response and objections above, UWM states that it suffered compensatory damages, loss of goodwill, and consequential damages as a result of Kevron's breach of the**

Wholesale Broker Agreement. Specifically, Kevron's submission of loans to Select Retail Lenders effectively resulted in UWM helping to fund those Select Retail Lenders whose business models hurt the wholesale mortgage channel, the continued strength on which UWM relies. UWM contends the Select Retail Lenders have led or will lead to independent mortgage brokers going out of business because the Select Retail Lenders directly solicit loan officers, talk negatively about brokers, solicit brokers' past clients, and independently contact real estate agents in an effort to cut out brokers from mortgage transactions. Without independent mortgage brokers, UWM's business model is hamstrung, if not eliminated. Therefore, Kevron's breach of the Wholesale Broker Agreement through its submission of loans to Select Retail Lenders damaged UWM in that UWM was supporting Kevron with UWM's technology, service, and other benefits and administrative costs, while Kevron was working with the Select Retail Lenders to hurt the rest of the broker channel by funding the competition of brokers and the competition of the wholesale mortgage channel. In other words, Kevron's breach damaged UWM because though UWM was providing a benefit, financial and otherwise, to Kevron under the Wholesale Broker Agreement, Kevron's support of the Select Retail Lenders was directly harming UWM's ability to continue to do business.

**Further, Kevron's breaches of the Wholesale Broker Agreement damage UWM because UWM's goodwill and continuing relationships with other independent mortgage brokers are eroded where those brokers who abide by the Wholesale Broker Agreement learn that brokers like Kevron are violating the Wholesale Broker Agreement. Kevron's breaches, especially if left unenforced by UWM, entice other brokers to also breach their agreements with UWM or will cause them to end their relationships with UWM, resulting in fewer loans to UWM. UWM also incurs damages to enforce the All-In Addendum, including administrative costs relating to the monitoring, data retrieval, and litigation of the All-In Addendum breaches.**

**INTERROGATORY NO. 5:**   If you have retained any expert to testify concerning the claims alleged in your complaint, please set forth the name, address, and telephone number of each person whom you expect to call to testify at trial as an expert witness.

**RESPONSE: UWM objects to this Interrogatory as premature. UWM will identify any experts it intends to call at the trial of this matter, and will produce information and documents required by the Federal Rules of Civil Procedure, in accordance with the court's scheduling order.**

**INTERROGATORY NO. 6:** Identify all persons with whom you have communicated, whether by email, telephone, or in person, regarding the allegations in your complaint and describe in detail the substance of each communication.

**RESPONSE: UWM communicated with various individuals at Kevron regarding its breach of the Wholesale Broker Agreement, including Kevin Rhatigan. UWM notified such individuals about Kevron's ongoing requirement to comply with the terms of the Wholesale Broker Agreement and possible consequences arising out of the failure to do so.**

**UWM otherwise objects to this Interrogatory as unduly burdensome and because it seeks information protected by the attorney-client privilege or work-product doctrine, to the extent it seeks identifications of people involved with, and substance of, communications with UWM personnel or UWM legal representatives regarding the Complaint, which are not within the scope of a proper discovery request.**

**INTERROGATORY NO. 7:** For the Agreement alleged in the Complaint, please identify all specific breaches of the agreement(s) that you contend are at issue in this matter, including the date of each breach and the act or omission constituting the breach.

**RESPONSE: UWM contends that Kevron breached Paragraph 3.03(x) of the Agreement. Under Fed. R. Civ. P. 33(d), see the documents produced in response to Request for Production No. 12 for the specific acts known to UWM as of the date of this response that constitute said breaches.**

**UWM otherwise objects to this Interrogatory to the extent it seeks information, in particular dates and events of breach, that are already within Kevron's knowledge and of which UWM is not aware. UWM may learn of additional breaches during discovery and, if it does, will contend those breaches also are at issue.**

**INTERROGATORY NO. 8:**  Please state when plaintiff amended the Wholesale Agreement with its All-In-Addendum via a website posting.

**RESPONSE: UWM announced the amended terms of the All-In Addendum on March 4, 2021.**

**UWM otherwise objects to this Interrogatory as it is premised on a false statement: that the amendment occurred "via a website posting."**

**INTERROGATORY NO. 9:**  Please describe the calculation that was used to determine the amount of liquidated damages identified in the All-In-Addendum.

10

RESPONSE: UWM states that at the time of the formation of the Wholesale Broker Agreement and All-In Addendum, it was difficult to quantify the amount of damage Kevron's submission of loans to Select Retail Lenders would cause to UWM's ongoing business model, mortgage consumers, independent mortgage brokers, and the wholesale mortgage channel as a whole. Indeed, by cutting the broker out of certain transactions, the model of the Select Retail Lenders weakens the individuals and entities that UWM partners with to sell to provide mortgage services to provide to borrowers. The amount of liquidated damages reflects the parties' honest attempt, at the time of the creation and execution of the Agreement, to estimate just compensation for the actual damages likely to arise in the event of Kevron's breach.

UWM otherwise objects to this Interrogatory as improper under the Federal Rules of Civil Procedure to the extent that it purports to require UWM to create a document if it does not exist.

**SUPPLEMENTAL RESPONSE: UWM states that at the time of the formation of the Wholesale Broker Agreement and All-In Addendum, it was difficult to quantify the amount of damage Kevron's submission of loans to Select Retail Lenders would cause to UWM's ongoing business model, mortgage consumers, independent mortgage brokers, and the wholesale mortgage channel as a whole. Indeed, by cutting the broker out of certain transactions, the model of the Select**

11

Retail Lenders weakens the individuals and entities that UWM partners with to sell mortgage services to provide to borrowers.

Specifically, when an independent mortgage broker with whom UWM works submits loans to Select Retail Lenders, it effectively results in UWM helping to fund the Select Retail Lenders whose business models hurt the wholesale mortgage channel, the continued strength on which UWM relies. The Select Retail Lenders' businesses will lead to independent mortgage brokers going out of business because the Select Retail Lenders directly solicit loan officers, talk negatively about brokers, solicit brokers' past clients, and independently contact real estate agents in an effort to cut out brokers from mortgage transactions. Without independent mortgage brokers, UWM's business model is hamstrung, if not eliminated. UWM provides extensive technology, service, and other benefits and administrative costs to the independent mortgage brokers with which it works. But those same independent mortgage brokers' submission of loans to Select Retail Lenders damages UWM's business because those submissions hurt the rest of the broker channel by funding the competition of brokers and the competition of the wholesale mortgage channel on which UWM relies. In short, while UWM provides a benefit, financial and otherwise, to independent mortgage brokers

under the Wholesale Broker Agreement, that broker's support of the Select Retail Lenders directly harms UWM's ability to continue to do business.

Therefore, the amount of liquidated damages reflects the parties' honest attempt, at the time of the creation and execution of the Wholesale Broker Agreement, to estimate just compensation for the actual damages likely to arise in the event of Kevron's breach. Specifically, the $5,000 figure represents the sum of (1) the approximately typical revenue UWM receives for a closed loan (in the thousands of dollars) and (2) the less-precise per-loan value of UWM's costs to develop and maintain the services and benefits it provides independent mortgage brokers.

**INTERROGATORY NO. 10:** Describe all facts, circumstances, and actions that show that the liquidated damages at issue were uncertain and difficult to ascertain when the Wholesale Agreement was executed.

**RESPONSE: UWM states that at the time of the formation of the Wholesale Broker Agreement and All-In Addendum, it was difficult to quantify the amount of damage Kevron's submission of loans to Select Retail Lenders would cause to UWM's ongoing business model, mortgage consumers, independent mortgage brokers, and the wholesale mortgage channel as a whole. Indeed, by cutting the broker out of certain transactions, the model of the Select Retail**

13

Lenders weakens the individuals and entities that UWM partners with to sell to provide mortgage services to provide to borrowers.

UWM otherwise objects to this Interrogatory as overly broad in that it seeks "all" facts, circumstances, and actions bearing on why, at the time of the formation of the Wholesale Broker Agreement and All-In Addendum, it was difficult to estimate actual damages that would result if Kevron breached the All-In Addendum. UWM also objects because this Interrogatory as irrelevant, premature, unduly burdensome, and not proportional to the needs of the case, because it contravenes Kevron's express contractual acknowledgement that such damages "may be difficult, if not impossible, to ascertain" and because undertaking discovery regarding actual damages would defeat the point of the liquidated-damages clause in the Wholesale Broker Agreement, as amended. UWM further objects to this Interrogatory to the extent it seeks a legal conclusion.

**INTERROGATORY NO. 11:** Describe how plaintiff became aware that Kevron submitted 22 mortgage loans to the Select Retain Lenders as alleged in ¶22 of plaintiff's complaint.

**RESPONSE: UWM became aware of Kevron's breach through commercially available reporting services that provide information regarding mortgage loans**

closed in various states. UWM believes it utilized third-party data aggregators CoreLogic and/or First American to analyze recorded mortgage information at the county and city level, as applicable.

UWM otherwise objects to this Interrogatory to the extent it seeks information, in particular dates and events of breach, that are already within Kevron's knowledge and of which UWM is not aware. UWM may learn of additional breaches during discovery and, if it does, will contend those breaches also are at issue.

**INTERROGATORY NO. 12:** Describe all facts, circumstances, and actions that support your contention that Kevron agreed to the All-In-Addendum.

**RESPONSE:** Section 7.08 of the Wholesale Broker Agreement provides that the "Agreement, and UWM's policies, procedures, requirements and instructions concerning Mortgage Loan Applications and Mortgage Loans . . . may be amended by UWM from time to time, and UWM will endeavor to provide broker with prompt notice thereof." In that Section, Kevron agreed "that the submission of any Mortgage Loan Applications or Mortgage Loan to UWM after such amendment shall be [Kevron's] agreement to the amendment without further signature or consent of any kind." After UWM announced the terms of the All-In Addendum on March 4, 2021, Kevron agreed to the

Wholesale Broker Agreement, as amended (and including the All-In Addendum) each time it submitted a loan to UWM for underwriting, purchase, and/or funding.

Moreover, though it was incumbent on Kevron to know the applicable terms when it submitted loans to UWM, Kevron actually knew it was agreeing to the amendment because, while not required to do so, UWM took the extra step, through its online Pipeline loan submission system, of detailing the terms of the All-In Addendum on the same screen that Kevron used to submit customer information regarding each of its submitted loans.

Finally, on November 8, 2021, Kevron expressly renewed its Wholesale Broker Agreement, which also contained the full terms of the All-In Addendum.

UWM otherwise objects to this Interrogatory to the extent it seeks information that are already within Kevron's knowledge and of which UWM is not aware. UWM may learn of additional information during discovery showing Kevron's agreement to the All-In Addendum. UWM further objects to this Interrogatory as overly broad in that it seeks "all" facts, circumstances, and actions bearing on Kevron's agreement to the Wholesale Broker Agreement and All-In Addendum.

**INTERROGATORY NO. 13:** State the amount of actual damages plaintiff contends it sustained as a result of each alleged breach of contract by Kevron.

**RESPONSE: UWM refers Kevron to its response and objections to Interrogatory No. 4.**

**INTERROGATORY NO. 14:** Identify all persons involved in the negotiation and formation of the Wholesale Agreement.

**RESPONSE: UWM states that Kevin Rhatigan of Kevron executed its original Wholesale Broker Agreement and acknowledged Kevron's renewal in 2021. As to the decision to implement the All-In Addendum and the business terms of those provisions, various upper management employees were involved. The Wholesale Broker Agreement itself is otherwise a standardized agreement, drafted for UWM by its legal counsel years ago and amended from time to time thereafter.**

**UWM otherwise objects to this Interrogatory as irrelevant, overbroad, unduly burdensome, and not proportional to the needs of the case in that it requests the identity of persons "involved in the negotiation and formation of" the Wholesale Broker Agreement as a whole, which overwhelmingly has nothing to do with any claim, damages, or defense at issue in this case.**

**INTERROGATORY NO. 15:** State the amount of revenue plaintiff generated from Kevron's loan submissions for each month from July 2019 through February 2022.

RESPONSE: UWM objects to this Interrogatory as irrelevant, unduly burdensome, harassing, and not proportional to the needs of the case, because the revenue UWM generated from Kevron (both in the aggregate and even more so on a monthly basis) has nothing to do with any claim, damages, or defense at issue in this case. UWM further objects to this Interrogatory as unduly burdensome, harassing, and not proportional to the needs of the case to the extent that identifying the requested information would require undue cost or effort, if possible at all.

FIRST SUPPLEMENTAL RESPONSE: Subject to its objections stated above, UWM states it generated a total revenue of $961,237 from Kevron's loan submissions that closed with UWM.

**SECOND SUPPLEMENTAL RESPONSE: Subject to its objections stated above, UWM states it generated a total revenue of $961,237 from Kevron's loan submissions that closed with UWM. The total revenue is broken down monthly as follows:**

| Month | Revenue |
|---|---|
| April 2020 | $52,749 |
| May 2020 | $22,822 |
| June 2020 | $35,390 |
| July 2020 | $54,990 |

18

| | |
|---|---|
| August 2020 | $63,515 |
| September 2020 | $106,070 |
| October 2020 | $183,702 |
| November 2020 | $43,014 |
| December 2020 | $155,037 |
| January 2021 | $65,073 |
| February 2021 | $29,150 |
| March 2021 | $41,324 |
| April 2021 | $12,777 |
| May 2021 | $9,416 |
| June 2021 | $10,396 |
| July 2021 | $20,384 |
| August 2021 | $15,493 |
| September 2021 | $2,821 |
| October 2021 | $1,002 |
| November 2021 | $23,699 |
| December 2021 | $510 |
| January 2022 | $486 |
| February 2022 | $11,417 |
| **Total** | **$961,237** |

**INTERROGATORY NO. 16:** State the facts upon which Heather Demy will testify to support the allegations in plaintiff's complaint.

**RESPONSE: Heather Demy is a Team Lead of Strategic Partnerships for UWM and may testify as to UWM's general operating procedures, organizational structure, record retention, and business dealing processes with brokers, including Kevron. Specifically, she may have knowledge of the general application of the All-In Addendum and UWM's initial determination of Kevron's breach.**

19

UWM otherwise objects to this Interrogatory as unduly burdensome and incapable of answer because it calls for a complete narrative of a witness's future testimony at the inception of discovery in this case. In providing the foregoing answer as a good-faith summary of the material facts UWM presently understands Ms. Demy may testify about, UWM does not represent that Ms. Demy will actually testify on those facts (or at all), or whether Ms. Demy may offer additional testimony as elicited by Kevron or in response to information not yet known to UWM or that may be developed in discovery.

**INTERROGATORY NO. 17:** State the facts upon which Ken Chapman will testify to support the allegations in plaintiff's complaint.

**RESPONSE: Ken Chapman was UWM's Account Executive for Kevron and may testify regarding his UWM sales roles and duties relating to Kevron and regarding the process of informing brokers about agreeing to the All-In Addendum and the effect of non-agreement to the All-In Addendum.**

UWM otherwise objects to this Interrogatory as unduly burdensome and incapable of answer because it calls for a complete narrative of a witness's future testimony at the inception of discovery in this case. In providing the foregoing answer as a good-faith summary of the material facts UWM presently understands Mr. Chapman may testify about, UWM does not represent that

**Mr. Chapman will actually testify on those facts (or at all), or whether Mr. Chapman may offer additional testimony as elicited by Kevron or in response to information not yet known to UWM or that may be developed in discovery.**

**INTERROGATORY NO. 18:** State the facts upon which Desmond Smith will testify to support the allegations in plaintiff's complaint.

**RESPONSE: UWM states that Desmond Smith does not have discoverable information that UWM may use to support its claims or defenses.**

**INTERROGATORY NO. 19:** State the facts upon which Allen Beydoun will testify to support the allegations in plaintiff's complaint.

**RESPONSE: Allen Beydoun is UWM's Executive Vice President of Sales and may testify regarding his knowledge of Kevron's breach of the All-In Addendum and his communications with Kevin Rhatigan regarding Kevron's breach of the All-In Addendum, including without limitation, Mr. Rhatigan's statement that he did not intend to require Kevron's loan officers to comply with the All-In Addendum.**

**UWM otherwise objects to this Interrogatory as unduly burdensome and incapable of answer because it calls for a complete narrative of a witness's future testimony at the inception of discovery in this case. In providing the**

**foregoing answer as a good-faith summary of the material facts UWM presently understands Mr. Beydoun may testify about, UWM does not represent that Mr. Beydoun will actually testify on those facts (or at all), or whether Mr. Beydoun may offer additional testimony as elicited by Kevron or in response to information not yet known to UWM or that may be developed in discovery.**

**<u>INTERROGATORY NO. 20:</u>** Identify all 22 mortgage loans plaintiff alleges Kevron sent to Select Retail Lenders.

**<u>RESPONSE:</u> UWM refers Kevron to its response and objections to Interrogatory No. 7.**

Respectfully submitted,

By: */s/ Lane Morrison*
Moheeb H. Murray (P63893)
William E. McDonald, III (P76709)
Mahde Y. Abdallah (P80121)
**BUSH SEYFERTH PLLC**
100 West Big Beaver Road, Suite 400
Troy, MI 48084
T/F: (248) 822-7800
murray@bsplaw.com
mcdonald@bsplaw.com
abdallah@bsplaw.com

A. Lane Morrison
**BUSH SEYFERTH PLLC**
5810 Wilson Road, Suite 125
Humble, TX 77396

T/F: (281) 930-6853
morrison@bsplaw.com

Dated: September 15, 2023    *Attorneys for United Wholesale Mortgage, LLC*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on September 15, 2023, I served a copy of the foregoing document on all attorneys of record via email at the addresses below.

William S. Cook (P68934)
Matthew J. High (P82783)
17197 N. Laurel Park Drive
Suite 201
Livonia, Michigan 48152
Phone: (313) 327-3100
William.cook@wilsonelser.com
Matthew.high@wilsonelser.com
*Attorneys for Defendant Kevron Investments, Inc.*

<u>*/s/ Lane Morrison*</u>
Lane Morrison

## **VERIFICATION**

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that Plaintiff United Wholesale Mortgage, LLC's Third Supplemental Responses to Defendant Kevron Investments, Inc.'s First Interrogatories are true and correct to the best of the knowledge, information, and belief of United Wholesale Mortgage, LLC, after a reasonable and diligent investigation.

Executed on  9/15/2023

By: _____
Bill Stone, Deputy General Counsel