UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED WHOLESALE MORTGAGE, LLC

          Plaintiff

Case No. 2:22-cv-10395

vs.

Hon. Laurie J. Michelson

KEVRON INVESTMENTS, INC

          Defendant.

BUSH SEYFERTH PLLC
Moheeb H. Murray (P63893)
William E. McDonald, III (P76709)
Mahde Y. Abdallah (P80121)
100 West Big Beaver Road
Suite 400
Troy, Michigan 48084
(248) 822-7800
mmurray@bsplaw.com
mcdonald@bsplaw.com
abdallah@bsplaw.com
*Attorneys for Plaintiff*

WILSON ELSER MOSKOWITZ
EDELMAN & DICKER LLP
William S. Cook (P68934)
Matthew J. High (P82783)
17197 N. Laurel Park Drive, Suite 201
Livonia, Michigan 48152
313.327.3100 p | 313.327.3101 f
william.cook@wilsonelser.com
matthew.high@wilsonelser.com
*Attorneys for Defendant*

KEVRON INVESTMENTS, INC'S MOTION FOR SUMMARY JUDGMENT

     Defendant Kevron Investments, Inc. moves for summary judgment under

Federal Rule of Civil Procedure 56 and for entry of an order dismissing plaintiff

United Wholesale Mortgage, LLC's (UWM) lawsuit in its entirety for the reasons in Kevron's accompanying brief, including: 1) UWM's liquidated damages provision is an unenforceable penalty; and 2) Kevron never signed the All-In Addendum or agreed to its terms.

In accordance with Local Rule 7.1(a), on May 31, 2024, Kevron's counsel contacted UWM's counsel and sought occurrence. UWM's counsel refused.

For the reasons set forth above and in the accompanying brief, Kevron requests the court grant its motion, enter summary judgment in its favor, dismiss UWM's complaint with prejudice, and award it any other relief this court considers appropriate.

WILSON ELSER MOSKOWITZ
EDELMAN & DICKER LLP

By: /s/ *Matthew J. High*
William S. Cook (P68934)
Matthew J. High (P82783)
17197 N. Laurel Park Drive, Ste 201
Livonia, Michigan 48152
313.327.3100
william.cook@wilsonelser.com
matthew.high@wilsonelser.com
*Attorneys for defendant Kevron*
*Investments, Inc.*

ii

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED WHOLESALE MORTGAGE, LLC

      Plaintiff

                         Case No. 2:22-cv-10395

vs.

                         Hon. Laurie J. Michelson

KEVRON INVESTMENTS, INC

      Defendant

| | |
|---|---|
| BUSH SEYFERTH PLLC<br>William E. McDonald, III (P76709)<br>Moheem H. Murray (P63893)<br>Mahde Y. Abdallah (P80121)<br>100 West Big Beaver Road<br>Suite 400<br>Troy, Michigan 48084<br>(248) 822-7800<br>mcdonald@bsplaw.com<br>abdallah@bsplaw.com<br>*Attorneys for Plaintiff* | WILSON ELSER MOSKOWITZ<br>  EDELMAN & DICKER LLP<br>William S. Cook (P68934)<br>Matthew J. High (P82783)<br>17197 N. Laurel Park Drive, Suite 201<br>Livonia, Michigan 48152<br>313.327.3100 p | 313.327.3101 f<br>william.cook@wilsonelser.com<br>matthew.high@wilsonelser.com<br>*Attorneys for Defendant* |

KEVRON INVESTMENTS INC'S BRIEF IN SUPPORT
OF ITS MOTION FOR SUMMARY JUDGMENT

## ISSUE PRESENTED

UWM sued Kevron alleging that Kevron breached the parties' agreement and that UWM is entitled to liquidated damages based on the parties' agreement. Should this court grant summary judgment for Kevron when UWM's alleged liquidated damages clause is an unenforceable penalty and UWM has no provable damages?

Kevron answers yes.

UWM answers no.

UWM sued Kevron alleging that Kevron breached the parties' agreement. Kevron, however, contends it never signed the agreement UWM is trying to enforce. Should this court grant summary judgment for Kevron when the undisputed facts show that Kevron never signed the agreement - known as the All-In Addendum - that UWM is trying to enforce?

Kevron answers yes.

UWM answers no.

297532200v.2

<u>CONTROLLING AND MOST APPROPRIATE AUTHORITY</u>

-   Federal Rule of Civil Procedure 56

-   *Curran v. Williams*, 352 Mich. 278, 89 N.W.2d 602, 605 (Mich. Ct. App. 1958).

-   *Daoudi v. Adkins*, 2008 Mich. App. LEXIS 1428 (Mich. App. 2008)

-   *Easton Telecom Servs, L.L.C v. Corecomm Internet Group, Inc*., 216 F. Supp. 2d 695, (N.D. Ohio 2002)

-   *Hemlock Semiconductor Operations, LLC v. SolarWorld Indus. Sachsen GmbH*, 867 F.3d 692, 702 (6th Cir. 2017)

-   *In re Construction Diversification, Inc*., 36 B.R. 434 (E.D. Michigan 1983).

-   *In re Exemplar Mfg. Co.*, 331 B.R. 704, 711-12 (Bankr. E.D. Mich. 2005)

-   *Randall v Douglass*, 321 Mich. 492, 496; 32 N.W.2d 721 (1948)

-   *Samson Sales, Inc. v. Honeywell, Inc.*, 12 Ohio St. 3d 27, 12 Ohio B. 23, 465 N.E.2d 392, 394 (Ohio 1984)

-   *Scholz v Montgomery Ward & Co, Inc*, 437 Mich. 83, 93;468 N.W.2d 845 (1991).

-   *Shore Fin. Servs v. Lakeside Title & Escrow Agency*, 2013 Mich. App. LEXIS 875, (May 21. 2013)

-   *Worley v McCarty*, 354 Mich. 599, 604-606; 93 N.W.2d 269 (1958)

v

<u>INTRODUCTION</u>

This lawsuit involves a contractual dispute between one of the largest mortgage lenders in the United States, plaintiff United Wholesale Mortgage (UWM), and a five-employee independent mortgage broker, Kevron Investments Inc. Kevron and UWM were parties to a Wholesale Broker Agreement. Agreements like these are common in the mortgage industry. Brokers typically work with several lenders to identify the best loans for their clients, who are potential real estate buyers.

For years, the parties operated under the agreement without incident. However, on March 4, 2021, UWM made a drastic decision. It tried to unilaterally alter the agreement and add what's been called the "All-In Addendum." The Addendum: (1) prevented Kevron from sending mortgage loans to two of UWM's competitors, Rocket Mortgage and Fairway Independent Mortgage; and (2) penalized Kevron $5,000 in purported liquidated damages for each loan closed with either lender, or a minimum of $50,000, whichever was greater. Kevron doesn't deny it closed loans with Rocket but maintains it never signed the Addendum or agreed to its terms. Kevron further argues the Addendum's liquidated damages provision is an unenforceable penalty provision.

UWM filed suit, alleging Kevron breached the agreement when it submitted 22 loans with UWM's competitors and failed to pay $5,000 for each loan closed. The parties have conducted discovery, and UWM's claims should be dismissed for

1

two glaring reasons. First, UWM's alleged liquidated damages provision is an unenforceable penalty because it does not reflect an honest attempt at approximating UWM's actual damages in case of Kevron's breach. Instead, it deterred Kevron from sending loans to UWM's competitors and punished Kevron for closing loans with them. This makes it a penalty. Moreover, Kevron never signed the Addendum or agreed to be bound its terms. For these reasons, this court should grant summary judgment for Kevron and dismiss UWM's claims.

## FACTUAL BACKGROUND

**The mortgage industry.** Most people have a basic understanding of the mortgage industry because of their experience buying homes. Fewer people understand the difference between wholesale mortgage lenders, retail mortgage lenders, and mortgage brokers. Understanding the distinction is critical to this case.

The mortgage industry is divided into two channels: retail and wholesale. American borrowers are likely more familiar with the retail channel, which constitutes most of the overall mortgage market. The retail channel comprises numerous financial institutions like Chase Bank and Bank of America. To obtain a mortgage through this channel, a prospective borrower reaches out directly to the financial institution to discuss their mortgage options.

The wholesale channel, on the other hand, does not allow the prospective borrower to speak directly to the lender. To access this channel, the prospective

borrower must hire an "independent mortgage broker" to survey pricing and options offered by wholesale lenders. Brokers typically receive a small percentage of the principal amount of the loan upon closing.

UWM is a wholesale residential mortgage lender. Kevron is an independent mortgage broker.  Fairway and Rocket are two of UWM's competitors. They offer retail *and* wholesale mortgage lending services. Neither Fairway nor Rocket is a party to this lawsuit, but understanding their roles is necessary.

**UWM's rivalry with Rocket Mortgage.** According to Forbes, Rocket is the largest mortgage lender in the U.S. by dollar amount, UWM is number two, and Fairway is number nine.[1] For some time now, there has been a brewing rivalry between Rocket and UWM for the number one spot. Although the origin of their rivalry remains a mystery, the existence of it is widely known.

Mat Ishbia, CEO of UWM and the owner of the Phoenix Suns, has never been reluctant to discuss his beef with Rocket's owner (and Cleveland Cavaliers owner) Dan Gilbert:

> "His company used to be No 1 in mortgage, UWM, my business, is No. 1 in mortgage. *I don't like the way they do business in a lot of things*. He probably doesn't like the way we do things. We're in the same town. We compete. We're winning. That's how it is right now."  (emphasis added)

---

[1] https://www.forbes.com/advisor/mortgages/10-largest-mortgage-lenders-in-us/

3

(Ex. 1—Detroit Free Press article) When the NBA team owners voted to confirm Ishbia as the Suns' new owner, Gilbert abstained. *Id*. Suffice to say, there's no love lost between the two.

While Rocket Mortgage is the largest mortgage lender in the nation by overall business, it trails UWM in underwriting loans for independent mortgage brokers. (Ex. 2—Detroit Free Press article) Relatedly, on March 4, 2021, Ishbia went on Facebook live and issued an ultimatum to independent mortgage brokers that did business with UWM. *Id*. He stated brokers *must sign* an agreement pledging to stop working with Rocket and Fairway if they wanted to continue working with UWM[2]:

> So I'm starting today and saying at UWM, we're not helping those that help them, "Ishbia said. "if you work with them, (you can't work with UWM any more."
>
> He added, "So here is the question, 'Are you all in? Are you in or are you out?" (*Id*.)

From this, the All-In Addendum was born.

**UWM's relationship with Kevron**. On July 22, 2019, UWM and Kevron entered into a Wholesale Broker Agreement. (Ex. 3—Wholesale Broker Agreement) Kevron did not negotiate the agreement, and it was not represented by legal counsel. (Ex. 4—Rhatigan dep., pg. 115-116) The agreement was a boilerplate agreement UWM used with the various brokers with which it did business. (*Id*.) The agreement

---

[2] It's unclear whether the inclusion of its lesser rival, Fairway, was a ruse intended to make it appear less directed at Rocket or originated from another personal agenda.

4

described the responsibilities for Kevron as broker and UWM as lender. (Ex. 3—
Wholesale Broker Agreement) For example, Kevron would receive mortgage loan
applications from qualified potential buyers and send those applications to UWM.
(*Id.*) This was no different than the business Kevron conducted with other lenders.

Suddenly and without notice, UWM tried to alter the agreement and add the
All-In Addendum. (Ex. 5—Wholesale Broker Agreement with Addendum) The
Addendum has two components. First, under Section 3.03(x), it stated:

> Broker will not submit a mortgage loan or mortgage loan application Rocket
> Mortgage or Fairway Independent Mortgage for review, underwriting,
> purchase, and/or funding. This requirement is limited Rocket Mortgage and
> Fairway Independent Mortgage. UWM will not add any other mortgage
> lender. If either Rocket Mortgage or Fairway Independent Mortgage acquire
> a mortgage lender (an " Acquired Lender'), this requirement applies only on
> a going forward basis as to the Acquired Lender, and is not effective as to the
> Acquired Lender until thirty (33) days after the acquisition is closed. (*Id.*)

Although no rationale is provided, the purpose of this section was to prevent Kevron
from submitting loans to Rocket or Fairway. The second change, found in Section
7.30, punished Kevron if it did:

> [Kevron] and UWM agree that the measure of damages in the event of
> a breach of [Kevron's] representation and warranty under Section
> 3.03(x) may be difficult, if not impossible, to ascertain. Accordingly, in
> the event of a violation of Section 3.03(x), [Kevron] shall immediately
> pay to UWM greater of (i) Five Thousand Dollars ($5,000.00) per loan
> closed with Rocket Mortgage, Fairway Independent Mortgage or
> subject to Section 3.03(x), an Acquired Lender, or (ii) Fifty Thousand
> Dollars ($50,000.00), as liquidated damages for such breach without
> the need for proof of damages by UWM. UWM's right to liquidated
> damages are in addition (not in lieu of) any other monetary or other

5

remedies UWM may have under this Agreement and/or applicable law. (*Id*.)

Taken together, the Addendum prohibited Kevron from sending mortgage loans to Rocket and Fairway and demanded it pay UWM a minimum of $50,000 or $5,000 per loan if it closed loans with either. Although UWM asked Kevron to sign the Addendum, Kevron refused. (*Id*.)

On February 23, 2022, UWM filed a one count breach of contract suit. (Ex. 6—Complaint; ECF No.1, PageID.1-9) UWM alleges Kevron agreed to the All-In Addendum, violated it by sending loans to Rocket, Fairway, and UWM at the same time, and that Kevron must pay UWM consistent with the liquidated damages provision for the loans closed with both lenders. ( *Id*. at PageID. 5-6, ¶19-27)

Kevron now moves for summary judgment following the end of discovery and asks this court to dismiss UWM's breach of contract suit. Kevron never agreed to the All-In Addendum and, therefore, did not breach any enforceable contract by closing loans with Rocket. Even if Kevron did agree to the All-In Addendum, the liquidated damages provision UWM seeks to enforce is a penalty and, therefore, unenforceable under Michigan law. Lacking any provable damages outside of the liquidated damages provision, UWM does not have any damages and, thus, cannot satisfy a necessary element of its case.

297532200v.2

STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 empowers the court to enter summary judgment if there is no genuine issue as to any material fact. *Redding v St. Edward*, 241 F.3d 530, 532 (6th Cir. 2001). For its breach of contract claim to survive summary judgment, UWM must show there is a genuine dispute of material fact about damages. *Wellington Corp. LLC v. Gennari Consulting, Inc.*, 631 F. Supp. 3d 464, 474 (N.D. Ohio 2022). There is not one here.

ARGUMENT

A. *This court should dismiss UWM's claim because its alleged liquidated damages provision is an unenforceable penalty.*

    a.   <u>Liquidated damages provisions are enforceable but in limited situations</u>.

Before explaining why UWM's liquidated damages provision is an unenforceable penalty, it is important to discuss when these clauses are enforceable. "A liquidated damages provision is simply an agreement by the parties fixing the amount of damages in the event of a breach and is enforceable if the amount is reasonable with relation to the possible injury suffered and not unconscionable or excessive." *St. Clair Med., P.C. v. Borgiel*, 270 Mich. App. 260, 270-271 (2006). A liquidated damages provision is appropriate "where actual damages are uncertain and difficult to ascertain or are of a purely speculative nature." *Id*. at 271.

7

In *Hemlock Semiconductor Operations, LLC v. SolarWorld Indus. Sachsen GmbH*, 867 F.3d 692, 702 (6th Cir. 2017), the Sixth Circuit applied Michigan law and found a liquidated damages in a commercial contract enforceable. There, Hemlock and Sachsen entered into a long-term supply agreement. *Id.* at 696. After several price fluctuations and agreements, Hemlock demanded Sachsen pay the original agreement price under the liquidated damages provision, which stated:

> in the event of a breach by Sachsen and termination by Hemlock, the full balance of the contract price for the entire remaining term of the LTAs will be awarded to Hemlock as liquidated damages. *Id.* at 705.

After Sachsen refused, Hemlock filed suit for breach of contract. *Id.* at 705, 696-697. Sachsen raised several defenses, including arguing that the liquidated damages provision was an unenforceable penalty. *Id.* at 697. Hemlock moved for summary judgment, and the district court granted it. *Id.*

Sachsen appealed, and the Sixth Circuit affirmed. *Id.* at 708. It held the liquidated damages provision was not a penalty namely because: (1) calculating loss profits in this situation is difficult because it included costs of raw materials, utilities, labor, and "discount rate" (an estimate of the conversion of a monetary sum from a future time period into a present value); and (2) the liquidated damages provisions reflected the parties' intent *to agree upon a simple formula for damages* (the remainder of the outstanding contract balance) in event of a breach by Sachsen and termination by Hemlock. *Id.* at 707-708.

8

b.   <u>A liquidated damages provision that constitutes a penalty is unenforceable in Michigan.</u>

Unlike liquidated damages, a penalty is a sum inserted in a contract not as the measure of compensation for breach, but rather as a punishment for breach. *Edoff v. Hecht*, 270 Mich. 689 (1935). Liquidated damages provisions that don't attempt to approximate actual damages in the event of a breach are penalties and unenforceable. *UAW-GM Human Resource Ctr. v. KSL Recreation Corp*, 228 Mich. App. 486, 508 (1998). "A liquidated damage clause is void as a penalty if it provides for an amount of damages that is unreasonable in light of the possible injury suffered in the event of a breach." *In re Exemplar Mfg. Co.*, 331 B.R. 704, 711-12 (Bankr. E.D. Mich. 2005) (citing *Curran v. Williams*, 352 Mich. 278 (1958)).

Before accepting and enforcing a liquidated damages provision, the court must examine the provision and determine whether the "figure is really in the nature of an attempted computation of the actual damages likely to result, or whether it has the effect of exacting a penalty from the contract breaker." *Nichols v. Seaks*, 296 Mich. 154, 161 (1941). Use of the terms "liquidated" or "stipulated" damages does not mean that the clause is valid and not a penalty. *Nichols*, 296 Mich. at 161-162.

Whether a liquidated damages clause is valid depends on conditions at the time the contract was signed,[3] not at the time of the breach. *Solomon v. Dep't of State*

_____

[3] The agreement upon which Kevron seeks liquidated damages was *never* signed.

9

*Highways & Transp.*, 131 Mich. App 479, 484 (1984). Whether a liquidated damages provision is unconscionable or an unenforceable penalty is a matter of law to be determined by the court in light of all the circumstances. *U.S. v. Swanson*, 618 F. Supp. 1231, 1243 (E.D. Mich. 1985) (New York law); *In re Construction Diversification, Inc.*, 36 B.R. 434, 436 (1983) (applying Michigan law).

  c. <u>UWM's actual damages were not difficult to ascertain because it does not have any.</u>

   For UWM's liquidated damages provision to be enforceable, it must show its actual damages at the time of time contracting "were uncertain and difficult to ascertain or are of a purely speculative nature." *St. Clair Med.,* 270 Mich App at 271. UWM, however, cannot meet its burden because it does not have any damages, making its liquidated damages provision unenforceable.

   On May 1, 2024, Kevron deposed UWM's designated corporate representative, Sarah Deciantis (Chief Marketing Officer). UWM identified her as the most knowledgeable person about UWM's actual damages. Curiously, however, she could not explain what they were:

297532200v.2

```
10  BY MR. HIGH:
11  Q    Okay.  So can you point to any documentation or
12       evidence that shows what UWM's actual damages are?
13  A    There is not a document, no.
14  Q    Can you point to any evidence outside of just referring
15       back to the liquidated damages clause?  Can you
16       refer -- can you show me any evidence what the actual
17       damages are?
18  A    No, it's all in liquidated damages.
19  Q    No, I'm saying outside of that.  So if we take that out
20       can you point to any evidence that shows what the
21       actual damages are?
22  A    Outside of where it's been rolled up into liquidated,
23       no.
24  Q    Okay.  So you -- so just so I understand -- so what the
25       actual damages -- how much in actual damages does UWM
```

```
                                                  Page 111
1   suffer if Kevron sends loans to Rocket or Fairway?  How
2   much?
3  A   We did not --
4            MR. MURRAY:  Object to form and foundation.
5            THE WITNESS:  -- we did not break that out
6   separately from liquidated damages.  It's all in one.
```

(Ex. 7—Deciantis dep., pg. 110-111) This court will see the questioning went on for pages, but what this court won't see is an answer to Kevron's questions. (Ex. 7—Deciantis dep., pg. 104-112)

This is likely because UWM seems to think a liquidated damages provision is presumptively valid if it is in a contract. Put differently, UWM mistakenly believes Kevron has to pay a random liquidated amount simply because it was in the parties' contract. But that's not the law in Michigan. The liquidated amount *must* be a reasonable pre-estimate of actual damages. *In re Exemplar Mfg. Co.*, 331 B.R. 704, 711-712 (Bankr. E.D. Mich. 2005). And that can't be the case because UWM does not have any damages.

11

In *Exemplar*, Lear contracted with Exemplar to produce component parts. *In re Exemplar Mfg. Co*. 331 B.R. at 704.  After Exemplar began losing money, it entered into a Resourcing Agreement with Lear and its lender, in which the parties agreed Lear would provide resourcing. *Id*.  The Agreement stated if Lear failed to meet its resourcing deadline, it would have to pay Exemplar $16,667.00 (1/30 of $500,000). *Id*. The $500,000 was based on Exemplar's representation to Lear that it was losing $500,000 per month in producing component parts. *Id*. Lear failed to meet its resourcing deadline, and Exemplar later filed bankruptcy, which included an adversary complaint against Lear seeking monies for its failure to comply with the Resourcing Agreement. *Id*. at pg. 708.

One of the central issues in the lawsuit was whether the $16,667.00 (1/30 of $500,000) figured constituted a valid liquidated damages clause or an unenforceable penalty. *Id*. at 710. The court stated the $16,667 per day figure was significantly higher than any loss Exemplar anticipated it would suffer due to a delay by Lear in resourcing and that it bore no relationship to any actual loss Exemplar expected to suffer or *did suffer*. *Id*. at 717.  The court further opined:

> Exemplar did not arrive at the figure of $16,667 per day (which was based on the figure of $500,000 per month) by attempting to estimate the actual losses it would suffer if there was a delay in resourcing by Lear. Rather, Exemplar's $500,000 figure *was just an effort to fix a sum large enough to give Lear a powerful "incentive" to complete resourcing* by November 7, 2022. *Id.* at 715 (emphasis added).

The court did not stop there. It further reasoned that Exemplar "failed to identify or quantify any actual loss or to produce any documents showing any actual losses suffered due to Lear's delay in resourcing." *Id.* at 716. "Lear asked Exemplar to identify its actual damages through interrogatories and in depositions, and in response, Lear only identified the loss it suffered due to Lear's failure to pay to Exemplar the $16,667 per day payment under the Resourcing Agreement." *Id.*

Here, the facts are more compelling. There simply isn't any evidence in the record UWM arrived at the $5,000 per loan figure by attempting to estimate the actual losses it would suffer if Kevron closed loans with Rocket or Fairway. In fact, the evidence shows the $5,000 figure was not based on any loss UWM would allegedly suffer if Kevron closed loans with Rocket or Fairway:

```
 2   Q    Yeah, but I mean, is that loss of loans?  Like, what --
 3        what is the basis for that $5,000 amount?
 4   A    It was our best assessment.
 5   Q    Yeah, but what's the basis?  Like, what's the support?
 6        How was that number decided?
 7   A    Based on the technology, the marketing, the training,
 8        the growth tools that we offer clients, as well as
 9        goodwill to the channel.
10   Q    Okay.  And how much was the training?
11   A    That is not something I have off the top of my head.
12   Q    How about the technology?
13   A    We would have to get those exact numbers.
14   Q    Growth tools?
15   A    We would have to get those.
```

(Ex. 7—Deciantis dep., pg. 73) Yet, the price of UWM's technology, marketing, training, growth tools, and goodwill bear no reasonable relationship to the alleged actual loss UWM claims it suffers when Kevron closes loans with Rocket or

13

Fairway. "A plaintiff in a breach of contract case *must* establish a causal link between the alleged improper conduct of the defendant and the plaintiff's damages." *Miller-Davis Co v. Ahrens Const, Inc*., 296 Mich App 56, 71 (2012) (emphasis added). A causal link is one based on reasonable inferences, as opposed to impermissible conjecture. *Id.* at 72. There's simply no causal link between the cost of UWM's technology and the number of loans Kevron closed with Rocket.

The $5,000 liquidated amount also can't be an approximate estimate of damages because Kevron owes nothing if it closes a loan with someone other than Rocket or Fairway. In that situation, UWM doesn't think it has damages. So if Kevron closes a loan with a company called Sierra Pacific, it owes UWM nothing. But if it closes a loan with Rocket, it owes UWM $50,000. That, however, makes no sense. In both situations, Kevron is closing loans with UWM's competitor, but in one case (Sierra Pacific), UWM acknowledges it has no damages, yet in the other (Rocket), it claims it is damaged and that Kevron owes it $50,000.

When viewed in this context, it should be clear that the liquidated damages provision is an unenforceable penalty. UWM does not have any actual damages if Kevron closes loans with UWM's competitors. The fact that UWM singled out Rocket and Fairway, to the exclusion of all other competitors, shows that UWM was intending to penalize brokers who worked with Rocket and Fairway.

14

Like the defendant in *Exemplar,* Kevron repeatedly asked UWM in written discovery and during Deciantis's deposition what UWM's actual losses were. (Ex. 7—Deciantis dep., pg. 102-112) UWM neither provided any documentation nor quantified its actual loss. *Id*. Instead, UWM *only* identified the loss it suffered due to Kevron's closing of loans with Rocket or Fairway:

```
11   BY MR. HIGH:
12   Q   Right, and I understand that.  I just want an answer to
13       my question.  Can you tell me under oath that UWM did,
14       in fact, suffer actual damages, or did it only suffer
15       the liquidated damages that you mentioned in the
16       agreement?
17   A   The liquidated damages are all inclusive.
```

*(Id.* at pg. 105) UWM's actual damages are not difficult to ascertain because it does not have any damages. Therefore, the liquidated damages provision is an unenforceable penalty.

      d.   <u>There's no evidence UWM and Kevron intended to fix the amount of UWM's damages based upon the situation of the parties and the sum mentioned.</u>

Liquidated damages provisions are not enforceable when "it is obvious from the contract . . . that the principle of compensation has been disregarded." *Curran*, 89 N.W.2d at 605 (emphasis added). "The violation, or disregard of this principle of compensation, may appear to the court in various ways, --from the contract, the sum mentioned, and the subject matter." *Id.* at 284. After looking at the situation of the parties and the sum mentioned, this court will see the principle of compensation was ignored.

Indeed, courts have stated where "there is a disparity of bargaining power and one party unilaterally imposes a liquidated damages provision in an adhesion contract, the skepticism (bordering, it has been suggested, on outright hostility) shown by the common law to liquidated damages is at its height." *Dist. Cablevision Ltd. P'shp v. Bassin*, 828 A.2d 714, 724 (D.C. 2003); *Howard Johnson Int'l, Inc. v. Patel*, 2001 U.S. Dist. LEXIS 3168 (E.D New York 2001); *See also Jordache Enterprise, Inc. v. Global Union Bank*, 688 F. Supp. 939, 944 (S.D.N.Y. 1988); *See also Leasing Service Corporation v. Justice*, 673 F.2d 70, 73 (2d Cir. 1982). The facts here merit intense scrutiny.

To begin with, the liquidated damages provision was never negotiated or discussed with Kevron before UWM tried to insert it. (Ex. 7—Deciantis dep., pg. 20; Ex. 4—Rhatigan dep., pg. 115 - 116) This is not surprising because the initial agreement was UWM's standard adhesion contract, and UWM's attempted inclusion of the liquidated damages provision was based on an alleged unilateral modification provision in that agreement.[4] (Ex. 7—Deciantis dep., pg. 19; Ex. 6—Complaint, ECF No.1, PageID.5,¶18) From this, the court can see there's no evidence *the parties* intended to fix damages because the fixing *only* included the input of one party—

---

[4] Contracts of adhesion are characterized by standardized forms prepared by one party which are offered for rejection or acceptance without opportunity for bargaining and under the circumstances that the second party cannot obtain the desired product or service except by acquiescing in the form agreement. *Beauchamp v. Great W. Life Assurance Co*. 918 F. Supp. 1091 (E.D. Mich. 1996).

16

UWM. Although these facts are not conclusive, they show liquidated damages was never a topic of discussion at the time of contracting between the parties.

Additionally, the sum mentioned shows the parties did not fix actual damages. UWM has not provided any evidence showing the method or formula UWM used to determine its damages were $5,000 for each loan closed with Rocket or Fairway. This is important because a mutually agreed upon calculation is evidence the parties intended to approximate damages. *Hemlock*, 867 F.3d at 708 - 708.  Oddly, UWM doesn't think the factual basis for the liquidated damages provision needs to be in the agreement (*Id*. at pg. 83) UWM's corporate representative also failed to provide any basis for the arbitrarily determined figure:

```
 6  Q   So if there is a formula for this calculation you would
 7      know about it, right?
 8  A   I would think so.
 9  Q   Okay.  And do you know about any formula for the basis
10      of that 5,000?
11  A   Not down to a perfect science.
12  Q   Okay.  What about any science?
13  A   There is definitely value in what is provided to our
14      clients, and we calculated that best -- on our best
15      assessment.
16  Q   No, and I understand the value.  But I want to know
17      what math was done to arrive at $5,000.  Can you show
18      me how that that number was determined?
19          MR. MURRAY:  Object to form and foundation.
20          THE WITNESS:  There is not a specific formula
21      I can show you.
22  BY MR. HIGH:
23  Q   Okay.  Same question for the 50,000.  Can you show me a
24      formula of how that 50,000 was determined?
25  A   No, it's the same thing.
```

17

(*Id.* at pg. 80) Even when asked how it came up with liquidated amount during written discovery, UWM bemoaned—claiming its damages were difficult to ascertain. (Ex. 8—UWM's INT answers) This shows UWM never took any steps to compute the damages it believed it would suffer in the event of a breach.

The record shows that based on the situation of the parties, and the sum mentioned there was never any real attempt to fix damages. There was only an attempt by UWM to force Kevron to pay a random amount of money for doing business with companies UWM didn't like. Thus, the liquidated damages constitutes a penalty.

> e.   <u>UWM's alleged liquidated damages provision is a penalty because Kevron had to pay a minimum of $50,000 regardless of the nature of breach that occurred.</u>

UWM's Addendum penalized Kevron without regard to the nature of Kevron's breach. At a minimum, Kevron had to pay $50,000 whether it closed one loan or ten loans. This makes it a penalty.

"'Where, by the terms of a contract, a sum is mentioned as "liquidated damages" for a nonperformance of several distinct stipulations of very different degrees of importance, and this sum is to be payable equally on a failure to perform the least, as to that to perform the most, important or whole of them together, it is in legal effect a penalty . . . .'" *Randall v. Douglass*, 321 Mich. 492, 496 (1948), quoting *Decker v. Pierce*, 191 Mich. 64, 70 (1916). "[T]he element common to most

liquidated damages clauses that get struck down as penalty clauses is that they specify the same damages regardless of the severity of the breach." *XCO Int'l Inc. v. Pac. Sci. Co.*, 369 F.3d 998, 1004 (7th Cir. 2004). A clause that estimates the amount of a loss as a lump-sum payment for both major and minor breaches alike is evidence of a penalty. *See e.g., Samson Sales, Inc. v. Honeywell, Inc.*, 12 Ohio St. 3d 27, 12 Ohio B. 23, 465 N.E.2d 392, 394 (1984).

UWM is no stranger to penalty clauses. In *Shore Fin. Servs v. Lakeside Title & Escrow Agency*, 2013 Mich. App. LEXIS 875 (May 21, 2013) (cert. denied, 495 Mich. 914 (2013), the Michigan Court of Appeals found that UWM's alleged liquidated damages provision was a penalty. There, UWM and a mortgage broker entered into a Wholesale Lending Agreement. *Shore Fin. Servs*, 2013 Mich. App LEXIS at 2. Under the agreement, the broker would submit the applications of various borrowers to UWM, and UWM would consider whether to fund the loan. *Id*. The broker submitted Clara Parker's loan application, and UWM pre-approved it contingent upon certain conditions. *Id*. A miscommunication ensued, and Parker's loan application closed without the contingent conditions being met. *Id*.

UWM filed suit against the broker and the title agency alleging various claims, including breach of contract. *Id*. The defendants moved for summary judgment and the court granted their motion. *Id*. at pg. 3. One of the reasons was UWM failed to

19

submit any admissible evidence in support of its damages. *Id*. UWM appealed, and

the Michigan Court of Appeals affirmed the trial court's decision. *Id*. at pg. 11.

The Court noted UWM relied on a liquidated damages provision within the

addendum to the closing instructions to support its alleged damages. *Id*.   The

addendum stated:

> the failure to close the loan, or the failure to comply with all of
> plaintiff's closing conditions, will result in $1,000 per day penalty until
> the failures(s) are rectified. *Id.* at pg. 12.

The court determined this clause was a penalty. *Id*. The court reasoned, " [i]t requires

the payment of the same sum regardless of the degree in the breaching party's failure

to perform . . . ." *Id*. Put plainly, the penalty was invariant to the gravity of the breach.

Our case is more compelling. Kevron would have to pay a minimum of

$50,000 *regardless* of whether it closed one loan with Rocket or ten with Fairway:

> Accordingly, in the event of a violation of Section 3.03(x), [Kevron] shall
> immediately **pay to UWM greater of (i) Five Thousand Dollars ($5,000.00)
> per loan closed with Rocket Mortgage, Fairway Independent Mortgage
> or subject to Section 3.03(x), an Acquired Lender, or (ii) Fifty Thousand
> Dollars ($50,000.00**), as liquidated damages for such breach without the need
> for proof of damages by UWM. (Ex. 5)

Because the clause says *Kevron shall pay the greater of*, it didn't matter if Kevron

closed three loans with Rocket or five loans with Fairway or if Kevron closed eight

loans with Fairway or two loans with Rocket. The penalty remained $50,000. In

other words, no matter the breach Kevron owed a minimum of $50,000 unless it

20

closed more than ten loans with UWM's selected competitors. If Kevron closed eleven loans, then it would owe $55,000. This is simply illogical.

As in *Shore Fin. Servs* where the court held $1,000 a day was a penalty because the nature of breach did not change the penalty amount, this court should find a $50,000 minimum to be a penalty because Kevron had to pay it regardless of the breach.

> f.  <u>If this court considers UWM's liquidated damages provision a penalty, then it must award UWM its actual damages of which it has none.</u>

During discovery, Kevron asked UWM what its actual damages were, but UWM never answered. (Ex. 8—UWM's INT answers) It never provided a single document detailing its damages or proffered any expert to support its damages. Nor did UWM's Corporate Representative state otherwise. (Ex. 7—Deciantis dep., pg. 110) This is because it doesn't have any. UWM has consistently stated it doesn't need to prove actual damages. (Ex. 8—UWM's INT answers) While true, UWM misses the point.

Liquidated damage provisions are to be evaluated according to their reasonableness, under the facts and circumstances of the case. *Wilkinson v. Lanterman*, 314 Mich. 568 (1946).  Reasonableness is a function,  at least in part, of the accuracy with which *such stipulated damages approximate the actual damages incurred by the party* seeking enforcement of the liquidated damages provision. *In re Constr. Diversification, Inc.*, 36 B.R. 434 (E.D. Michigan 1983). UWM's lack of

21

actual damages shows the stipulated damages was not an approximation of anything yet alone damages. And courts have granted dispositive motions when there is no evidence of an actual amount of damages. *Daoudi v. Adkins*, 2008 Mich. App. LEXIS 1428 (2008).

There's no doubt UWM's alleged liquidated damages clause constitutes an unenforceable penalty. But Michigan's Supreme Court has held that when this is the case, a court will award actual damages. *Worley v McCarty*, 354 Mich 599, 604-606; 93 NW2d 269 (1958); *Curran*, 352 Mich at 282-283. However, as explained above, UWM has not provided any evidence detailing its actual damages. For these reasons, this court should dismiss UWM's claim because its liquidated damages provision is an unenforceable penalty, and it does not have any actual damages.

B. *This court should dismiss UWM's breach of contract claim because Kevron never signed the All-In Addendum or agreed to its terms.*

The core allegation of UWM's case is that Kevron breached the All-In Addendum, but UWM's case fails because Kevron never signed the All-In Addendum or agreed to be bound by its terms.

To prevail on a claim for breach of contract, UWM must prove the following elements: "(1) there was a contract, (2) the other party breached the contract, and (3) the breach resulted in damages to the party claiming breach." *Bank of Am., NA v First Am. Title Ins. Co.*, 499 Mich. 74, 100 (2016). In addition, a valid contract requires mutual assent or a meeting of the minds on all essential terms. *Kloian v*

*Domino's Pizza, LLC*, 273 Mich. App. 449, 453 (2006). A meeting of the minds is decided by applying an objective standard by looking at the express words of the parties and their visible acts, not their subjective states of mind. *Id*. at 454.

In November 2019, Kevron agreed to the initial broker agreement with UWM. (Ex. 4—Rhatigan dep., pg. 114) Kevron does not dispute that. It did agree to a contract with UWM. But Kevron did not agree to or sign a contract involving the All-In Addendum. (*Id*.)

In March 2021, UWM attempted to unilaterally amend the agreement and add the Addendum. (Ex. 9—Trans. UWM CEO Facebook Live Video at pg. 12-16) This was odd considering the initial agreement prohibited unsigned agreements. 7.01 of the agreement states:

> **7.01. Amendment of Agreement**. Except as set forth on Section 7.08, this Agreement may not be amended except in writing executed by authorized representatives of both Broker and UWM. (Ex. 3)

In line with this provision, UWM's stated brokers had until March 15 to *sign* the Addendum:

> ```
> You have until March 15th to sign the
> addendum.  And if you don't sign the addendum,
> but, hey I'm not working with them, that's no
> problem.  Then you and nobody in your company
> will be able to work with UWM anymore.
> ```

297532200v.2

(Ex. 9—Trans. UWM CEO Facebook Live Video at pg. 14) But Kevron never signed it, which is evidenced by the blank signature block UWM attached to its complaint. (Ex. 6—Complaint; ECF No.1, PageID.1-9) UWM's entire claim is based on the premise that the All-In Addendum modifications applied to Kevron, yet it never agreed to be bound by those terms, there can't be a breach of contract.

CONCLUSION

The common law views liquidated damages "with a gimlet eye."[5] This court should as well. Liquidated damages are meant to be an agreement between the parties forecasting actual but uncertain damages. Conversely, a penalty is meant to coerce a party to perform. The *unsigned* Addendum here represents the latter.

UWM's alleged liquidated damages provision functioned solely to prevent Kevron from sending loans to two of its competitors. Enforcing it sets a dangerous precedent—allowing sophisticated parties to disguise liquidated damages provisions as penalties for the sole purpose of stifling competition. As evidence of this point, look no further than UWM's CEO's comments after announcing the addendum, "[m]ake it so that if [Rocket and Fairway] - - they just lost 80 percent of their business potentially." Simply put, the purpose of the Addendum was twofold: (1) to cause Rocket and Fairway financial hardship; and (2) to penalize brokers who still wanted to work with them.

---

[5] *Dist. Cablevision Ltd. P-ship v. Bassin*, 828 A.2d 714, 723 (D.C. App. 2003).

24

Kevron never agreed to stop sending loans to Fairway and Rocket, and there is no *signed* agreement saying otherwise. Even if it had, UWM does not suffer any damages when Kevron closes loans with them. There's no doubt UWM does not like Rocket and maybe even Fairway. But penalizing Kevron because of it is unlawful. Therefore, this court should grant Kevron's motion.

WILSON ELSER MOSKOWITZ
EDELMAN & DICKER LLP

By: /s/ *Matthew J. High*
    William S. Cook (P68934)
    Matthew J. High (P82783)
    17197 N. Laurel Park Drive, Ste 201
    Livonia, Michigan 48152
    313.327.3100
    william.cook@wilsonelser.com
    matthew.high@wilsonelser.com
    *Attorneys for defendant Kevron*
    *Investments, Inc.*

Certificate of Service

The undersigned certifies that on June 5, 2024, this document was electronically filed with the Clerk of the Court using the CM/ECF system.

/s/ Rhoda Haick

297532200v.2

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED WHOLESALE MORTGAGE,
LLC,

       Plaintiff(s),

v.

KEVRON IVESTMENTS, INC,

       Defendant(s).

Case No.2:22-cv-10395
Honorable Laurie J. Michelson

## BRIEF FORMAT CERTIFICATION FORM

       I, Matthew High, hereby certify that the foregoing brief complies with Eastern District of Michigan Local Rules 5.1(a), 5.1.1, and 7.1 and Judge Michelson's Case Management Requirements. In particular, I certify that each of the following is true (click or check box to indicate compliance):

☒ the brief contains a statement regarding concurrence, *see* LR 7.1(a);

☒ the brief, including footnotes, uses 14-point font, *see* LR 5.1(a)(3);

☒ the brief contains minimal footnotes and, in all events, no more than 10, *see* Case Management Requirements § III.A;

☒ the brief and all exhibits are searchable .pdfs, *see* Case Management Requirements § III.A;

☒ the brief is double spaced (except for footnotes and necessary block quotes) with one-inch margins, *see* LR 5.1(a)(2);

☒ deposition transcripts have been produced in their entirety and not in minuscript, *see* Case Management Requirements § III.A;

☒ if the brief and exhibits total 50 pages or more, a courtesy copy with ECF headers will be sent to chambers, *see* Case Management Requirements § III.B.

I also acknowledge that if the Court later finds that these requirements are not met, my brief will be stricken.

       /s/  Matthew High
       Dated: 6/5/2024

285688421v.1